UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YOENIS LEANDRO HERNANDEZ RANGEL,

Petitioner,

v.

BRUCE SCOTT,

Respondent.[1]

CASE NO. 2:26-cv-03028-TL

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR APPOINTMENT OF COUNSEL

This matter is before the Court on Petitioner's Motion for Temporary Restraining Order ("TRO")[2] (Dkt. No. 12) and Emergency Motion for Appointment of Counsel (Dkt. No. 16). Having reviewed the motions, Respondents' opposition to the motion for TRO (Dkt. No. 15), and the relevant record, the Court DENIES the motions.

[1] Petitioner named Bruce Scott, Warden of the Northwest ICE Processing Center ("NWIPC"), as the Respondent. *See* Dkt. No. 1 (Petition) at 1. The United States of America has appeared as an Interested Party and is responding to the petition. *See* Dkt. No. 7 (Notice of Appearance). Respondent Scott has not appeared. For ease of reference, the Court will refer to Respondent Scott and Interested Party United States as "Respondents."

[2] Petitioner originally captioned his submission as an "Emergency Notice to the Court." The Court converted the Notice into a Motion for TRO. *See* Dkt. No. 13.

## I. BACKGROUND

On August 14, 2026, U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner and took him into immigration custody. Dkt. No. 1 at 6. Petitioner was taken to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id.*

On August 26, 2026, Petitioner, proceeding pro se, filed a petition for writ of habeas corpus. Dkt. No. 1. On August 27, 2026, the Court issued a Scheduling Order, which established a briefing schedule for this matter and, among other things, ordered Respondents to provide Petitioner with at least seven days' notice prior to any action to transfer Petitioner out of the Western District of Washington. Dkt. No. 2 at 2. That same day, however, after the Court issued the Scheduling Order, Respondents transferred Petitioner out of the District to a facility in Richwood, Louisiana. *See* Dkt. No. 9 (Bloom Decl.) ¶¶ 11, 15.

On August 28, 2026, a relative of Petitioner advised the Court by email that Petitioner had been transferred out of the District. *See* Dkt. No. 4. The Court ordered Respondents to confirm Petitioner's transfer and to advise the Court on Petitioner's location. Respondents acknowledged that Petitioner had in fact been transferred out of the District in violation of the Court's Scheduling Order and advised that Petitioner was scheduled to be returned to NWIPC on September 1, 2026. *Id.* ¶¶ 13–14. Between August 31, 2026, and September 4, 2026, ICE made four abortive efforts to fly Petitioner back to Tacoma. *See* Dkt. No. 11 (Correa Decl.) ¶¶ 4–8. None was successful. *Id.* ¶ 8. On September 4, 2026, the Court ordered that Petitioner be returned to NWIPC no later than September 8, 2026. Dkt. No. 13. On September 8, 2026, Respondents advised the Court that Petitioner had been successfully returned to NWIPC. Dkt. No. 17.

## II. LEGAL STANDARD

### A. Temporary Restraining Order

"Temporary restraining orders . . . are governed by the same standard applicable to preliminary injunctions." *Kathrens v. Zinke*, 323 F. Supp. 3d 1142, 1148 (D. Mont. 2018) (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 n.7 (9th Cir. 2001)). A TRO, like a preliminary injunction, is an extraordinary remedy that is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

> To obtain a preliminary injunction, a plaintiff must establish that (1) it is likely to prevail on the merits of its substantive claims, (2) it is likely to suffer imminent, irreparable harm absent an injunction, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest.

*All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 490 (9th Cir. 2023) (citing *Winter*, 555 U.S. at 20, 22–23). Ninth Circuit courts evaluate these factors on a "sliding scale"—that is, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and the injunction is in the public interest." *Arc of Cal. v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014) (citation modified). "The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Kathrens*, 323 F. Supp. 3d at 1149 (citing *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)). "Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *Roman v. Wolf*, 977 F.3d 935, 940–41 (9th Cir. 2020).

**B. Appointment of Counsel**

"There currently exists no absolute right to appointment of counsel in habeas proceedings." *Rosario Cantillo v. Warden Nw. Detention Ctr.*, No. C26-575, 2026 WL 675282, at *1 (W.D. Wash. Mar. 10, 2026) (citing *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986); *Anderson v. Heinze*, 258 F.2d 479, 481 (9th Cir. 1958)). However, under 18 U.S.C. § 3006A(a)(2)(B), the Court may appoint counsel to a financially eligible habeas petitioner when "the interests of justice so require." In determining whether to appoint counsel, the "court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

## III. Discussion

**A. Motion for TRO**

Petitioner's motion alleges that, during his time away from NWIPC, he was "subjected . . . to severe physical cruelty." Dkt. No. 12 at 1. Petitioner asserts, "Due to the severe emotional trauma caused by my 48-hour disappearance and incommunicado status, my mother suffered a critical medical emergency . . . and was rushed to the hospital under risk of cardiac arrest." *Id.* Petitioner asserts that his "mental and physical health, as well as [his] family's life, has been critically compromised by [ICE's] punitive actions." *Id.* He requests: "an immediate Emergency Order requiring the Respondents to produce immediate proof of life, mandate an independent medical evaluation, and order [his] immediate release under supervision due to gross governmental misconduct and severe risk to [his] safety and [his] family's survival." *Id.*

Although the Court is sympathetic to Petitioner's circumstances, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. In his motion, Petitioner does not engage with

any of the four *Winter* factors. *See generally* Dkt. No. 12. This is fatal to the motion. But in any event, the Court would still deny the Petitioner the relief he seeks, and it is clear that he cannot meet the threshold *Winter* factor.

First, as to "requiring the Respondents to produce immediate proof of life," the Court is unclear what, specifically, Petitioner is asking for. But on September 8, 2026, Respondents filed a notice with the Court advising that Petitioner had been returned to NWIPC that day. Dkt. No. 17 at 1. The Court accepts the Notice, which has been signed by Respondents' counsel, at face value. *See* Fed. R. Civ. P. 11(b). Additionally, on September 8, 2026, Petitioner filed his emergency motion for appointment of counsel (Dkt. No. 16), indicating that he is alive.

Second, as to an independent medical evaluation and/or release due to an alleged safety risk, the requested relief goes to a conditions-of-confinement challenge, which is appropriately put before a court in a civil rights action, not a habeas petition. A petition for habeas corpus challenges the legality of the petitioner's confinement. *See Doe v. Garland*, 109 F.4th 1188, 1194 (9th Cir. 2024) ("[A] habeas claim is one challenging the fact of confinement, rather than the conditions of confinement."). Moreover, nowhere in Petitioner's petition does he challenge the conditions of his confinement (*see generally* Dkt. No. 1), and "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint," *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). Such a relationship exists "where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id.* (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)). Because Petitioner's habeas petition seeks his release (or a related remedy that addresses the fact, not conditions, of Petitioner's confinement) (*see* Dkt. No. 1 at 15), the conditions-of-confinement issue in the TRO motion is fundamentally different from the issue in the habeas petition, and relief directed toward that issue is unavailable

in this case. Therefore, Petitioner cannot meet the requirement that he demonstrate a likelihood of success on the merits of the claims that are at the center of his TRO motion—that is, the conditions of his confinement—because those types of claims have not been and cannot be brought in his habeas case.

"The first [*Winter*] factor 'is a threshold inquiry and is the most important factor.'" *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "Thus, a 'court need not consider the other factors' if a movant fails to show a likelihood of success on the merits." *Id.* (quoting *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017)); *see, e.g.*, *Zuniga-Duran v. Oregon*, No. C26-1417, 2026 WL 1135876, at *1 (W.D. Wash. Apr. 27, 2026) (denying motion for TRO where petitioner failed to address *Winter* factors).

**B. Motion to Appoint Counsel**

The Court must summarily deny Petitioner's motion for two reasons. First, Petitioner has not provided any information indicating that he is "financially eligible" to be appointed counsel. *See, e.g.*, *Gonzalez v. Wilkinson*, No. C21-193, 2021 WL 8086299, at *1 (W.D. Wash. Feb. 18, 2021). Under 18 U.S.C. § 3006A(a), a person is financially eligible if they are "financially unable to obtain adequate representation[.]" Here, Petitioner paid the filing fee for his petition (*see* Dkt. No. 1), which is relevant in as much as it means that Petitioner has not submitted any financial information to the Court in support of an *in forma pauperis* ("IFP") application. Moreover, Petitioner does not refer to an inability to afford counsel in his motion. On this record, then, the Court has no basis to conclude that Petitioner is financially eligible. The Court will deny the motion "without prejudice to refiling with information allowing for a determination of financial eligibility." *Gonzalez*, 2021 WL 8086299, at *1.

Second, the motion for appointment of counsel focuses on his complaints about his conditions of confinement. *See generally* Dkt. No. 16. However, as previously discussed, claims regarding his conditions of confinement and treatment while being transported between immigration detention facilities is not an issue that can be addressed through the instant habeas petition. Nothing in this Order prevents Petitioner from contacting the non-profit organizations listed in his motion.

## IV. CONCLUSION

Accordingly, Petitioner's Motion for Temporary Restraining Order (Dkt. No. 12) and Motion to Appoint Counsel (Dkt. No. 16) are DENIED.

Dated this 10th day of September 2026.

Tana Lin
United States District Judge