UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YONIS LEANDRO HERNANDEZ RANGEL,

Petitioner,

v.

BRUCE SCOTT, Warden, Northwest ICE Processing Center,

Respondent.

CASE NO. 2:26-cv-03028-TL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner Yonis Leandro Hernandez Rangel's Petition for Writ of Habeas Corpus. Dkt. No. 1. Petitioner, proceeding pro se, is presently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Having reviewed the petition, Respondents'[1] Return (Dkt. No. 19), Petitioner's Reply (Dkt. No. 24), and the relevant record, the Court GRANTS the petition.

[1] Petitioner names "Bruce Scott, Warden, Northwest ICE Processing Center," as the Respondent in this case. *See* Dkt. No. 1 at 1. Bruce Scott is the Warden of NWIPC; he has not appeared in this case. *See* Dkt. No. 7 at 1. Instead,

## I. BACKGROUND

Petitioner Yonis Leandro Hernandez Rangel is a native citizen of Venezuela. Dkt. No. 21-4 (2026 Department of Homeland Security ("DHS") Form I-213). On September 13, 2023, Petitioner was apprehended by U.S. Border Patrol in El Paso, Texas, on suspicion that Petitioner had crossed the border unlawfully. Dkt. No. 20 (Reed Decl.) ¶ 4.[2] Two days later, on September 15, 2023, Petitioner was issued a Notice to Appear ("NTA"), alleging that Petitioner had entered the United States without inspection on or about the day of his arrest and charging him as removeable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i). Dkt. No. 21-1 (NTA). The same day, Petitioner was released from Border Patrol custody on an Order of Release on Recognizance ("OREC"). *See* Dkt. No. 21-2 (OREC); Dkt. No. 21-5 (Notice of Custody Determination). Petitioner's OREC included the command that Petitioner "must not violate any local, State, or Federal laws or ordinances." Dkt. No. 21-2 at 2. The OREC also provided that "[f]ailure to comply with the conditions of this [OREC] may result in revocation of your release and your arrest and detention by [DHS]." *Id.*

After release, Petitioner started a still-pending asylum claim (*see* Dkt. No. 1 at 26), obtained work authorization, (*see id.* at 22), and worked as a food delivery driver, (*see id.* at 6). On June 1, 2026, Petitioner was arrested in Washington County, Oregon, on the charge of Driving Under the Influence of Intoxicants ("DUI"), a Class A Misdemeanor under Oregon law.

---

the United States participates in this case, and opposes Petitioner's petition, as an interested non-party. *See id.* The United States purports to respond to the petition "on behalf of U.S. Immigration and Customs Enforcement Acting Seattle Field Office Director Julio Hernandez; U.S. Department of Homeland Security ('DHS') Secretary Markwayne Mullin; DHS; and U.S. Attorney General Todd Blanche." *Id*. For ease of reference, the Court refers to the United States and the constituent entities represented here by counsel as "the Government."

[2] Many of the facts recounted here are based on the narrative portions of documents from Petitioner's immigration record, or on the declaration of Deportation Officer Kurtis Reed, who does not claim to have firsthand personal knowledge of most of the facts therein (*see* Dkt. No. 20 ¶ 2). The Court makes no findings as to whether these are true and correct statements of fact.

Dkt. No. 21-3 (Oregon Record); *see* Or. Rev. Stat. § 813.010(4). Petitioner originally pleaded not guilty on June 25, 2026, before eventually pleading no contest and entering into a diversion agreement on July 20, 2026. Dkt. No. 21-3 at 3; *accord* Dkt. No. 25 (Reply Exhibits) at 2.

On August 18, 2026, Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") in Portland, Oregon. Dkt. No. 21-4 at 3. According to DHS records, Petitioner was detained because of his DUI arrest. *Id.* Petitioner is now detained at NWIPC. Dkt. No. 1 at 1.[3]

## II. Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## III. Discussion

Petitioner effectively makes two requests of this Court: to "[d]irect Respondent[s] to show cause and identify the specific statutory authority under which [he] is detained[,]" and to "[o]rder my release if the Court determines that [his] detention lacks lawful statutory authority or violates the Constitution[.]" Dkt. No. 1 at 15.

---

[3] Although Petitioner is currently detained at NWIPC, Petitioner's place of detention has not been constant. After the Court issued a Scheduling at Order (Dkt. No. 2) that barred Respondents from moving the Petitioner out of the Court's jurisdiction without first providing seven days' notice, Petitioner was moved from NWIPC to a DHS facility in Louisiana without notice to either Petitioner or this Court. *See* Dkt. No. 7 (Respondent's First Notice). Respondents admit that this transfer constituted a "violation of this Court's Scheduling Order." *Id.* at 1. Despite having originally promised to correct this violation within three days (*id.* at 2), Respondents failed on three separate occasions to return Petitioner to Washington, and Petitioner remained in Louisiana for more than a week. *See* Dkt. No. 10 (Respondent's Second Notice). Only after the Court filed an Order on Emergency Notice (Dkt. No. 13) did Respondents remedy their violation and return Petitioner to NWIPC. *See* Dkt. No. 17 (Third Respondent Notice). In the meantime, Petitioner claims he was transported from Louisiana to Texas, and finally to Arizona, before being returned to NWIPC. *See* Dkt. No. 24 at 4, *see also* Dkt. No. 25 at 6–10 (screen captures from ICE's Online Detainee Locator System).

**A. Statutory Authority for Petitioner's Detention**

As a preliminary matter, the Court will identify the statutory authority under which Petitioner is detained.

Petitioner argues he is detained pursuant to 8 U.S.C. § 1226(a) because "the [Ninth Circuit] held that noncitizens who are apprehended in the interior of the United States—rather than at the border—are subject to the detention framework of 8 § U.S.C. 1226 [*sic*] [.]" Dkt. No. 24 at 1 (citing *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026) ("[W]e conclude that [noncitizens] present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)")). Petitioner argues that, therefore, his detention is not mandatory, as Section 1226 provides that Respondents "*may* release" the Petitioner either on "bond of at least $1,500" or "conditional parole[.]" 8 U.S.C. § 1226 (emphasis added).

The Government admits that "[c]ourts in this District have previously treated noncitizens released on OREC as detained under the discretionary authority of 8 U.S.C. § 1226(a)." Dkt. No. 19 at 7. Nevertheless, Respondents still argue that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A), since he was "apprehended near the border shortly after his unlawful entry into the United States," and contend that "ICE lawfully detains him under 8 U.S.C. § 1225(b)(2)(A)." Dkt. No. 19 at 6, 2. If the Government is correct, then the INA, as interpreted by the Supreme Court in *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018), requires "mandat[ory] detention" of Petitioner as a Section 1225(b) detainee "throughout the completion of applicable proceedings." But the Government is not correct.

//

//

//

Petitioner is correct that Section 1226(a) governs his detention, though not because of the holding in *Rodriguez Vazquez*.[4] Rather, the record demonstrates Respondents have treated Petitioner as subject to Section 1226(a) since at least September 15, 2023, when he was released from his initial custody on an OREC. The OREC states that Petitioner was released "[i]n accordance with section 236 of the [INA]"—that is, 8 U.S.C. § 1226. Dkt. No. 21-2. But if Petitioner was truly subject to mandatory detention under Section 1225(b) at the time of his release from custody, Respondents could never have released him on an OREC under Section 1226. *See Jennings*, 583 U.S. at 283 (beyond humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), "there are no other circumstances under which [noncitizens] detained under § 1225(b) may be released"). This is a contradiction the Government completely ignores.

This Court is unconvinced by the Government's argument that Section 1225(b)(2)(A) now applies when this claim is rebutted by DHS's own decision making. *See, e.g.*, *Ahmad v. Mullin*, No. C26-2194, 2026 WL 2689820, at *2 (W.D. Wash. Sept. 14, 2026) ("Where petitioner is 'treated by Respondents as subject to detention under § 1226, rather than mandatory detention under § 1225,' the former is more likely to apply." (citation modified) (quoting *Del Valle Castillo v. Wamsley*, No. C25-2054, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025))); *Quintanilla v. Hernandez*, No. C26-1629, 2026 WL 1827541, at *3 (W.D. Wash. June 25, 2026) (concluding that noncitizen was detained under 8 U.S.C. § 1225(a) due to ICE's past classification of him). Therefore, the Petitioner is detained under 8 U.S.C. 1226(a), and his detention is not mandatory.

//

//

---

[4] *Rodriguez Vazquez* addresses the classification of "unadmitted [noncitizens] who reside in the United States for extended periods"—that is, beyond the two-year eligibility cutoff for expedited removal procedures. 183 F.4th 1160, 1189; *see* 8 U.S.C. 1225(b)(1)(A) (establishing expedited removal process). As Petitioner was apprehended shortly after his arrival in the United States, he falls outside of that opinion's holding.

**B. Constitutionality of Petitioner's Re-Detention**

Petitioner challenges the legal basis for his re-detention and asks the Court to "[o]rder [his] release if the Court determines that [his] detention . . . violates the Constitution[.]" Dkt. 1 at 15. Specifically, Petitioner challenges as unconstitutional his re-detention without an individualized custody or bond hearing before a neutral decisionmaker. *Id.* The Court assesses Petitioner's claims as follows.

The Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also P.T. v. Hermosillo,* No. C25-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.").

In *Mathews*, the Supreme Court established a three-part balancing test for determining whether an administrative procedure provides the process constitutionally due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the

> fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). District courts in this Circuit have applied the *Mathews* test in similar circumstances since then. *See, e.g.*, *Marquez Rujano v. U.S. Immigr. & Customs Enf't*, No. C26-325, 2026 WL 764150, at *3–4 (W.D. Wash. Mar. 18, 2026); *Torres v. Hermosillo*, No. C25-2687, 2026 WL 145715, at *6 (W.D. Wash. Jan. 20, 2026); *Sira-Hurtado v. Hermosillo*, No. C25-2173, 2025 WL 3294986, at *2 (W.D. Wash. Nov. 26, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

Respondents acknowledge the relevance of the *Mathews* analysis here. *See* Dkt. No. 19 at 7–11. Consistent with persuasive authority, the Court will evaluate Petitioner's claims under *Mathews*, considering each factor in turn to determine whether Petitioner's detention comports with constitutional due process requirements.

**a. The Private Interest Affected by the Official Action**

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 696 (holding that even a noncitizen with a final order of removal has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). The Ninth Circuit has found that "a detained person's liberty interest is substantial." *Rodriguez Diaz*, 53 F.4th at 1199.

Here, Petitioner has a substantial and inherent interest in retaining his "[f]reedom from bodily restraint." *Foucha*, 504 U.S. at 80. Since Petitioner's release on OREC, he has lived in

Oregon for three years. Dkt. 24 at 1. In this time, Petitioner has relied on Respondent's affirmative grant of liberty to start a still-pending asylum case, obtain a driver's license, obtain work authorization, and work as a delivery food driver. Dkt. No. 1 at 9. Petitioner also provides financial assistance to his mother, who he asserts is currently hospitalized. Dkt. No. 22 at 2. These facts demonstrate that Petitioner has a heightened reliance interest on his release. *See, e.g.*, *Caisa Telenchana v. Hermosillo*, No. C26-00363, 2026 WL 696806, at *2–4, 9 (W.D. Wash. Mar. 12, 2026) (noting petitioners released on ORECs who had applied for asylum and obtained work permits while on release had "established liberty interests in the months and years they were permitted to live in the United States").

Respondents do not contest that Petitioner maintains some level of liberty interest. Dkt. No. 19 at 7 ("Courts in this District have recognized that [liberty] interest once a noncitizen has been released into the community." (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–22 (W.D. Wash. 2025)). Instead, Respondents contend that since the OREC specifically listed conditions for release, those liberty interests are diminished because they are both "conditional" and "time-limited[.]" Dkt. No. 19 at 7. Additionally, Respondents claim that Petitioner's arrest for driving while intoxicated should render his liberty interest "less than someone who had not committed a crime [or] violated conditions of release." Dkt. No. 19 at 8.

But even assuming Petitioner's liberty interest is diminished by its conditional nature and the alleged violation of the OREC, *see K.G.M.Q. v. Bondi*, No. C26-506, 2026 WL 962609, at *7 (W.D. Wash. Apr. 9, 2026), Petitioner's interest in being free from confinement remains "the core of the liberty protected by the Due Process Clause," *Foucha*, 504 U.S. at 80. Even a diminished interest in one's freedom from confinement still remains extraordinarily weighty, *see Rodriguez Diaz*, 53 F.4th at 1199 ("A detained person's liberty interest is substantial[.]") Therefore, the first factor weighs in Petitioner's favor.

**b. The Risk of Erroneous Deprivation of Liberty and the Probable Value of Procedural Safeguards**

Respondents, claiming "[t]his factor most clearly distinguishes the present case from the typical re-detention matters previously decided by this Court[,]" argues that the risk of erroneous deprivation is substantially low. Dkt. No. 19 at 8. Respondents claim they "possess[] concrete, contemporaneous evidence of a criminal arrest for Driving under the Influence." Dkt. No. 19 at 8–9. Therefore, they claim, because "the ground for revocation is a criminal arrest that constitutes a violation of a previously noticed release condition, the risk that the deprivation is erroneous is markedly reduced." Dkt. No. 19 at 9.

But the Government takes too much liberty with both the language of the OREC as well as the caselaw. First, with regard to the OREC, the condition is "You must not violate any local, State, or Federal laws or ordinances." Dkt. No. 21-2 at 2. The condition does not say "you must not be arrested" for any violation. Second, the Government's effort to support its position that "a ground for revocation is a criminal arrest" with *Demore v. Kim*, 538 U.S. 510 (2003), falls flat as the Government's own description of the holding in *Demore* is for "recognizing the reliability of criminal *convictions* in the immigration custody context[.]" Dkt. No. 19 at 2. While decided in the context of a criminal charge related to the terms of release under supervision under the INA, the Ninth Circuit has recognized that a no contest plea is a "special creature under the law," that "does not bear the same indicia of reliability as a guilty plea when used as evidence of underlying culpability." *United States v. Nguyen*, 465 F.3d 1128, 1130 (9th Cir. 2006) (citation omitted). "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting a crime." *Id.* at 1130-1131 (quoting *North Carolina v. Alford*, 400 U.S. 25, 37 (1970)). Therefore, the Ninth Circuit held that a conviction resulting

from a no contest plea was not by itself sufficient evidence to prove a violation of the terms of supervised release. *Id.* at 1131. The Court is aware of no reason this rationale would not apply with equal force in this context, and that Respondents may impermissibly rely on the mere fact of a Petitioner's arrest and no-contest plea as sufficient to prove a violation of OREC conditions (and, in fact, did so here) is precisely the type of erroneous deprivation that pre-detention hearings may prevent.

Because Petitioner's no-contest plea does not necessarily establish the factual predicate that Petitioner violated his OREC, it is unclear where Respondents' confidence to the contrary originates. Respondents have not provided any evidence on whether Petitioner submitted to any blood alcohol or sobriety test, or the results of such tests, beyond asserting that ICE possessed concrete evidence of the arrest and no-contest plea. Dkt. No. 19 at 8–9. Without any individualized assessment of Petitioner's conduct, nor any proven violation of an OREC condition, the risk of erroneous deprivation remains high. Therefore, this factor of the *Matthews* test favors the Petitioner.

**c. Respondent's Interest in Re-Detaining Petitioner Without Hearing**

The third *Matthews* factor addresses the Government's interest in re-detaining Petitioner without a hearing. In similar cases, this Court previously found the Government's interest to be low. *See K.G.M.Q.*, 2026 WL 962609, at *8. Here, Respondents argue that requiring a pre-deprivation hearing in cases like Petitioner's would "impose significant administrative burdens." Dkt. No. 19 at 10.[5]

---

[5] Respondents also allege that "allowing [noncitizens who may not be in compliance with their OREC] to remain at large undermines the integrity of the conditional-release system[.]" Dkt. No. 19 at 10. But the Petitioner is not objecting to the possibility of detention outright and only requests a hearing prior to detention. *See* Dkt. No. 1 at 14 ("I respectfully submit that the Government should identify whether I have a right to seek [a] custody review . . . and what procedures have been provided to me.") It is unclear how Petitioner's request of due process that he is owed under the Constitution "undermines" any conditional-release system.

On the whole, the Court cannot find a logical basis for believing that providing pre-detention hearings would worsen the Respondents' administrative burdens. To be sure, providing a hearing would "naturally . . . require[] some expense of money and time," but "those costs are outweighed by the risk of erroneous deprivation of the liberty interest at stake." *K.G.M.Q.*, 2026 WL 962609, at *8. They are also outweighed by the additional administrative costs incurred by unnecessary detentions. *See Jorge M.F. v. Wilkinson*, No. C21-1434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." (citation modified)). Logically, providing a pre-detention hearing means qualifying noncitizens would *not* be detained in the first place. This would alleviate the need for the Government to house, feed, and clothe the noncitizens, as well as the need for costly litigation over whether a bond hearing should have been held in the first place.

And here, specifically, the Court notes that the Government's conduct belies any concern for efficiency. *See supra* n.4 (detailing the Government's removal of Petitioner from NWIPC in violation of the Court's scheduling order). While the initial violation of this Court's order may have been unintentional (*see* Dkt. No. 8 at 2), the Government nonetheless spared no expense in shuffling Petitioner between four states for over a week. *See* Dkt. No. 25 at 6–10. Violating the order was an expensive and time-consuming endeavor, and the Court considers it in determining Respondents' credibility in making an efficiency-based argument. The Government not taking the time to follow proper procedures has wasted taxpayers' dollars in untold amounts. Therefore, this factor of the *Matthews* test favors the Petitioner.

* * *

In sum, the Court finds that all three *Mathews* factors weigh in Petitioner's favor. The Court therefore finds that Petitioner's re-detention without proper notice and an opportunity to be heard violated his rights under the Fifth Amendment to the Constitution of the United States. The

Court finds that the remedy for such a violation is release. *See, e.g.*, *Arevalo-Hortua*, *v. Hernandez*, No. C26-2994, 2026 WL 2797986, at *7 (W.D. Wash. Sept. 18, 2026) (ordering release where re-detention without notice or opportunity to be heard violated due process); *Hernandez v. Scott*, No. 26-759, 2026 WL 933361, at *3–4 (W.D. Wash. Apr. 7, 2026) (same); *Amatbek Uulu v. Scott*, 2026 WL 865813, at *6 (W.D. Wash. Mar. 30, 2026) (same). Therefore, the Court will grant the habeas petition and order Petitioner's release.

## IV. CONCLUSION

According, the Court ORDERS as follows:

(1) The Petition for a Writ of Habeas Corpus (Dkt. No. 1) is GRANTED.

(2) Respondent and/or the Government:

(a) SHALL release Petitioner from detention within **twenty-four (24) hours** of this Order under appropriate conditions of release; and

(b) SHALL submit to the Court, within **forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

Dated this 20th day of October, 2026.

Tana Lin
United States District Judge